# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 26-390V**

KEVIN HOFMAENNER *and* JACQUELYN HOFMAENNER, *as parents and legal representatives of T.H., a minor*,

Petitioners,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Special Master Horner

Filed: September 9, 2026

Reissued for Public Availability: October 6, 2026

*Kevin and Jacquelyn Hofmaenner, Durham, NC, pro se petitioners.*
*Felicia Langel, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION[1]

On March 9, 2026, petitioners filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012) ("Vaccine Act"),[2] alleging that their minor child, T.H., suffered a Table Injury of immune thrombocytopenic purpura ("ITP") as a result of a measles, mumps, and rubella ("MMR") vaccination he received on September 29, 2022. (ECF No. 1, pp. 1-3, 13-14.) Petitioners acknowledge that their petition is untimely under the Vaccine Act's statute of limitations; however, they allege that they are entitled to equitable tolling. (*Id.* at 1-2, 14-22.) On May 22, 2026, respondent moved to dismiss the petition on the basis that it was not timely filed, disputing that equitable tolling is appropriate under the circumstances presented. (ECF No. 15.) For the reasons discussed below, respondent's motion is GRANTED, and this case is DISMISSED.

### I. Procedural History

[1] Pursuant to Vaccine Rule 18(b), this Decision was initially filed on September 9, 2026, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this Decision is reissued in its original form for posting on the court's website.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

As noted above, petitioners filed this petition on March 9, 2026. (ECF No. 1.) Petitioners also filed medical records, affidavits, photos, and records of other communications, marked as Exhibits 1-30. Respondent completed his medical review and filed his Rule 4(c) Report on May 22, 2026. (ECF No. 14.) Respondent does not dispute that T.H. suffered ITP as alleged; however, he contests both that the petition was timely filed and that T.H.'s ITP meets the Vaccine Act's severity requirement. (*Id.*) His report was accompanied by the instant motion to dismiss, which is limited to the timeliness issue. (ECF No. 15.) Petitioners filed their response to the motion to dismiss on May 26, 2026, and respondent filed a reply on June 10, 2026. (ECF Nos. 17, 21.) Accordingly, the motion is fully briefed and ripe for resolution.

In their motion response, petitioners argue that they should be permitted to engage in further development of the record before a determination as to equitable tolling is reached. (ECF No. 17, p. 25.) I have considered this argument, but I have determined that the parties have had a full and fair opportunity to develop the record and that it is appropriate to rule on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *Kreizenbeck v. Sec'y of Health & Human Servs*., 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record"). The petition is well pleaded in its detail, the petitioners have filed additional supporting exhibits, and based on the analysis that follows, further factual development would not alter the outcome given that the facts as pleaded are dispositive.

## II. Legal Standard

Under the National Vaccine Injury Compensation Program, awards of compensation are made to individuals who have suffered injuries after receiving vaccines. In general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; has received no previous award or settlement on account of the injury; and that a *causal link* exists between the vaccination and the injury. In some cases, the petitioner may simply demonstrate this final point by the occurrence of what has been called a "Table Injury." That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table. If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(i); § 300aa-14(a); § 300aa-13(a)(1)(B). As relevant here, the Vaccine Injury Table lists ITP as a compensable injury if it occurs within 7-30 days of administration of a vaccine containing the measles virus.[3] § 300aa-14(a), *amended by* 42 C.F.R. § 100.3.

---

[3] Alternatively, if no injury falling within the Table can be shown, a petitioner could still demonstrate entitlement to an award by showing that the vaccine recipient's injury or death was caused-in-fact by the vaccination in question. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii). However, petitioners have not

Section 16(a)(2) of the Vaccine Act further provides that: "[N]o petition may be filed for compensation under the Program for [a vaccine-related] injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." § 300aa-16(a)(2). This 36-month period begins to run at the first objectively recognizable sign of injury, even if the first symptom or manifestation is not sufficient to result in diagnosis. *Carson v. Sec'y of Health & Human Servs*., 727 F.3d 1365, 1369 (Fed. Cir. 2013). However, the Vaccine Act's statute of limitations can be subject to equitable tolling. *Cloer v. Sec'y of Health & Human Servs*., 654 F.3d 1322, 1340-44 (Fed. Cir. 2011) (en banc), *cert. denied sub nom.*, *Cloer v. Sebelius*, 566 U.S. 956 (2012). To establish that equitable tolling is appropriate, a petitioner must demonstrate that: (1) they pursued their rights diligently; and (2) an extraordinary circumstance prevented them from timely filing their claim. *K.G. v. Sec'y of Health & Human Servs.*, 951 F.3d 1374, 1379 (Fed. Cir. 2020).

Although the Vaccine Act and the Vaccine Rules contemplate case dispositive motions, *see* § 300aa-12(d)(2)(C-D) and Vaccine Rule 8(d), the dismissal procedures included within the Vaccine Rules do not specifically include a mechanism for a motion to dismiss, *see* Vaccine Rule 21. However, Vaccine Rule 1 provides that for any matter not specifically addressed by the Vaccine Rules, the special master may regulate the applicable practice consistent with the rules and the purpose of the Vaccine Act. Vaccine Rule 1(b). Vaccine Rule 1 also provides that the Rules of the Court of Federal Claims ("RCFC") may apply to the extent they are consistent with the Vaccine Rules. Vaccine Rule 1(c). Accordingly, there is a well-established practice of special masters entertaining motions to dismiss in the context of RCFC 12(b)(6), which allows the defense of "failure to state a claim upon which relief can be granted" to be presented via motion. *See, e.g.*, *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070 (Fed. Cl. Spec. Mstr. July 18, 2014); *Bass v. Sec'y of Health & Human Servs.*, No. 12-135V, 2012 WL 3031505 (Fed. Cl. Spec. Mstr. June 22, 2012); *Guilliams v. Sec'y of Health & Human Servs*., No. 11-716V, 2012 WL 1145003 (Fed. Cl. Spec. Mstr. Mar. 14, 2012); *Warfle v. Sec'y of Health & Human Servs.*, No. 05-1399V, 2007 WL 760508 (Fed. Cl. Spec. Mstr. Feb. 22, 2007).

Under RCFC 12(b)(6), a case should be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy." *Extreme Coatings, Inc. v. United States*, 109 Fed Cl. 450, 453 (2013) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). In considering a motion to dismiss under RCFC 12(b)(6), allegations must be construed favorably to the pleader. *Id*. However, the pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Golden v. United States*, 137 Fed. Cl. 155, 169 (2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

alleged that any alternative cause-in-fact claim exists that would include a different period of onset for purposes of determining the timeliness of the petition.

"To determine whether a complaint states a plausible claim for relief, the court must engage in a context-specific analysis and 'draw on its judicial experience and common sense.'" *Golden*, 137 Fed. Cl. at 169 (quoting *Iqbal*, 556 U.S. at 679). However, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Nonetheless, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. The Petition

The petition alleges that T.H.'s MMR vaccination was delayed due to an upper respiratory infection ("URI"), which was diagnosed at his 12-month well-child visit on September 22, 2022. (ECF No. 1, ¶ 16.) Therefore, he received the MMR vaccination at issue on September 29, 2022, after his URI had resolved. (*Id*. at ¶¶ 17-18.) Thereafter, petitioners allege that T.H. suffered a condition consistent with a Table Injury of ITP following a measles vaccination for which causation is presumed. (*Id*. at ¶¶ 75-76.)

Regarding onset, the petition alleges that ITP was first indicated by a pinpoint rash and bruising that occurred on October 13, 2022, 14 days post-vaccination. (ECF No. 1, ¶ 19.) A drop in platelet count was confirmed by October 27, 2022. (*Id.* at ¶¶ 1, 17, 33.) Accordingly, a timely petition based on these allegations would have needed to be filed by October of 2025. Specifically, petitioners assert the statute of limitations expired on October 13, 2025. (*Id*. at ¶ 78; *see also id.* at ¶ 111.) The petition acknowledges, however, that the instant action commenced about four months after the expiration of the statute of limitations. (*Id*. at ¶102.) Nonetheless, petitioners allege that they are entitled to equitable tolling of the statute of limitations based on misrepresentations made by T.H.'s medical providers, which constituted an extraordinary circumstance that prevented timely filing of the petition. (*Id*. at ¶ 86.)

In support of equitable tolling, petitioners plead, *inter alia*, the following facts:

- "Within hours of T.H.'s diagnosis, his father Kevin researched the vaccine-ITP connection, found peer-reviewed medical literature supporting it, and raised it with the treating physicians at UNC. He was not passive. He was not uninformed. The contemporaneous text messages, timestamped from October 27, 2022, the day of diagnosis, prove he identified the vaccine connection independently, without any provider informing him." (ECF No. 1, ¶ 2.)

- When Mr. Hofmaenner shared his research regarding vaccine-caused ITP, petitioners' interactions with the treating physicians left them with the impression that proving vaccine-causation was "impossible." (ECF No. 1, ¶ 3.) Specifically, Mr. Hofmaenner attests "I do not recall Dr. Habashy's exact words in response. However, I clearly recall that my research-

supported concern about the vaccine connection was not meaningfully engaged. The response made me feel as though I had raised something unwelcome, and that the connection I was asking about was unknowable or impossible to establish." (*Id*. at ¶ 45 (quoting Ex. 11, ¶ 12).) In a family group chat the same day, Mrs. Hofmaenner stated of the treating physicians' view of the MMR-ITP connection that it is "[v]ery hard/impossible to prove that but is a possibility." (*Id*. at ¶ 47 (citing Ex. 22).) After a second interaction with T.H.'s physicians, Mr. Hofmaenner believed that the physicians felt he was a "crazy anti-vaxxer." (*Id*. at ¶¶ 50-51 (quoting Ex. 11, ¶ 14).)

- Mr. Hofmaenner's conversations with the physicians regarding the cause of T.H.'s ITP were not appropriately documented in the medical records. (ECF No. 1, ¶ 60.)

- The physicians failed to use the ICD-10-CM code for vaccine adverse effects (T50.B95A), which official guidelines specify should accompany the ICD code for ITP (D69.3) when a vaccine is the recognized cause. (ECF No. 1, ¶ 65 (citing Ex. 8).) Yet, the physicians also did not "formally commit" to infection as the cause of the ITP by using the ICD code for a viral cause (B97.89). (*Id*. at ¶ 68 (citing Ex. 8; Ex. 7, p. 1).) Additionally, the physicians failed to submit a VAERS report, which is mandatory.[4] (*Id*. at ¶¶ 69-70, 94 (citing § 300aa-25(b)(1); *United States ex rel. Conrad v. Rochester Regional Health*, No. 1:2023-cv-00438, 2025 WL 1651787 (W.D.N.Y. June 11, 2025)).)

- T.H.'s discharge summary attributed his ITP to a virus and indicated that causation was "difficult to determine." (ECF No. 1, ¶¶ 5, 57.) Petitioners assert the attribution to an infection has no clinical basis because no viral testing was performed and T.H. was afebrile with clear lungs, no lymphadenopathy, and normal white blood cell count throughout his hospitalization. (*Id*. at ¶¶ 55-56.) However, a progress note from October 28, 2022, states of T.H.'s clinical course that "[t]he onset of the rash coincided with a URI as well as his 12 month vaccines (including MMR)." (*Id*. at ¶ 53 (quoting Ex. 5, p. 50).)

- "This Petition is filed late because a false statement induced Petitioners to abandon a valid claim they had already identified." (ECF No. 1, ¶ 7.)

---

[4] "VAERS" stands for Vaccine Adverse Event Reporting System. It is a national safety surveillance program created by the Vaccine Act that collects information about possible adverse reactions to vaccine that are administered in the U.S. *Catone v. Sec'y of Health & Human Servs*., No. 19-690V, 2025 WL 2692275, at *28 n.36 (Fed. Cl. Spec. Mstr. Aug. 8, 2025). However, "VAERS reports are to be filed when a patient suffers an adverse event soon after a vaccination; the reporting physician need not know whether the event was causally connected to the vaccination." *Howard v. Sec'y of Health & Human Servs*., No. 03-550V, 2006 WL 932381, at *14 (Fed. Cl. Spec. Mstr. Mar. 22, 2006). Therefore, the submission of a VAERS report does not necessarily evidence the submitting physician's view of any potential causal relationship. *Id*.

- Because a Table injury of ITP is presumed to be caused by vaccination, the treating physicians' statement that causation is "impossible to prove" is "objectively false" and constitutes a fraud that supports equitable tolling. (ECF No. 1, ¶¶ 77, 86.) Moreover, the "[p]roviders either knew T.H.'s injury was a Table injury or they did not. If they knew, their statement was knowingly false. If they did not know, they had a mandatory statutory duty to know: 42 U.S.C. § 300aa-25(b)(1) requires providers to report Table injuries, which necessarily requires knowledge of what Table injuries are. In either case, the statement was not a medical opinion within their clinical expertise – it was a legal representation about what could be 'proven' in a federal compensation system. When physicians opine on legal standards of proof and do so incorrectly, the resulting harm to families who reasonably rely on that guidance cannot be excused as good-faith medical judgment." (*Id*. at ¶ 90.)

- Given the strain of the situation (unsure during T.H.'s initial hospitalization whether he might have leukemia), deferring to the treating physicians' expertise "was the only psychologically possible response." (ECF No. 1, ¶ 91.)

- Mr. Hofmaenner's initial research and his sharing of the vaccine-ITP connection with the physicians on two occasions constitutes diligent pursuit of petitioners' rights. (ECF No. 1, ¶¶ 109-10.)

- As of October 1, 2025, which petitioners place twelve days prior to the expiration of the statute of limitations, Mrs. Hofmaenner wrote to T.H.'s pediatrician's office that "[a]lthough it couldn't be confirmed, he got ITP shortly after getting the first round of the MMR vaccine and I think we would like to wait until he is a little older for the next round." (ECF No. 1, ¶ 111 (quoting Ex. 27).) Thus, petitioners contend that "[t]he fraud was so complete that petitioners had become its unwitting carriers, transmitting the very misinformation that had been used to foreclose their rights." (*Id*. at ¶ 113.) Nonetheless, "[p]etitioners still believed the vaccine had caused T.H.'s ITP. That is why they sought to delay his second dose." (*Id*. at ¶ 114.)

- However, petitioners also allege that they were misled by the diagnosis of the ITP as secondary to infection and "[t]o search for vaccine injury compensation, [Mr. Hofmaenner] would have had to disbelieve his son's diagnosis, reject the After Visit Summary, and assume his child's treating physicians were wrong. The law does not require patients to reject the diagnoses they are given. A rule that penalizes parents for following their child's medical records would undermine the foundation of healthcare itself." (ECF No. 1, ¶ 119.)

- Petitioners first became aware of the VICP on October 16, 2025, when Mrs. Hofmaenner's uncle sent an unsolicited link to a social media post about vaccines. (ECF No. 1, ¶ 120 (citing Ex. 12, ¶ 19).)

## IV. Party Contentions

In his motion to dismiss, respondent argues that the petition is untimely because it was filed after October 13, 2025, and petitioners are not entitled to equitable tolling. (ECF No. 15, pp. 5-11.) Respondent stresses that the details of petitioners' conversations with T.H.'s treating physicians were not contemporaneously documented, but even if accepting them as true, "it is speculative to construe a physicians' response to a question regarding medical causation as an 'affirmatively false statement of legal fact' concerning the viability of a Vaccine Act claim – or any legal cause of action, for that matter." (*Id*. at 8 n.1.) Moreover, the fact that the Secretary of Health and Human Services recognizes a Table injury for policy purposes does not impute either legal knowledge of the program to treating physicians or impose a duty on them to advise patients regarding potential remedies under the Vaccine Act. (*Id*.)

In any event, equitable tolling based on fraudulent concealment requires active concealment of wrongdoing by a defendant. (ECF No. 15, p. 8 (citing *Simmons Oil Corp. v. Tesoro Petroleum Corp*., 86 F.3d 1138, 1142-43 (Fed. Cir. 1996).) In the context of the Vaccine Act, the Federal Circuit has explained that equitable tolling is unavailable absent an allegation that the government had engaged in intentional fraud or concealment. (*Id*. at 9 (citing *W.J. v. Sec'y of Health & Human Servs*., 93 F.4th 1228, 1242 (Fed. Cir. 2025), *cert. denied sub nom.*, *W.J. v. Becerra*, 145 S. Ct. 440 (2024)).) In this case, T.H.'s treating physician(s) are not defendants and are not alleged to have engaged in concealment on behalf of the government. (*Id.*) Indeed, "the alleged statement was not itself concealed; rather, petitioners contend they relied upon it." (*Id*.) Moreover, respondent contends that the statement that it would be difficult or impossible to prove causation "does not constitute the type of intentional fraudulent concealment contemplated by *Bailey*[5], *Simmons*, and *W.J.*" (*Id.*)

Respondent further notes that the petition sought to analogize the present circumstances to *Holland v. Florida*, 560 U.S. 631, 649-50 (2010).[6] (ECF No. 15, p. 9.) However, respondent argues that *Holland*, which involved egregious attorney misconduct in a habeas proceeding, represents a materially different context. (*Id*.) Although petitioners had raised *Holland* for the broader proposition that non-party misconduct can qualify as an extraordinary circumstance that justifies equitable tolling, respondent stressed that the *Holland* case turned on misconduct that implicated "fundamental canons of professional responsibility" that rose well beyond "garden variety" negligence. (*Id*. at 10 (quoting *Holland*, 560 U.S. at 652-53).) Thus, *Holland*

---

[5] Referring to *Baily v. Glover*, 88 U.S. 342, 349-50 (1874), which respondent characterizes as "[t]he leading case articulating the doctrine of fraudulent concealment." (ECF No. 15, p. 8.)

[6] The petition included legal arguments in addition to the factual pleadings discussed above. (ECF No. 1, pp. 14-22.)

does not support such a broad rule. (*Id.*) Moreover, respondent argues that the Supreme Court later clarified that it has never held that the test articled by *Holland* applies outside the habeas context. (*Id*. (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 n.2 (2016).) Nothing in this case implicates the type of professional responsibilities that an attorney owes to his client. (*Id.* at 11.) Moreover, even if inaccurate, the skepticism of the treating physicians regarding vaccine-causation "bears no resemblance to the type of egregious attorney abandonment and gross professional misconduct discussed in *Holland*." (*Id*.) Respondent cautions against seeking to expand *Holland* such that any erroneous medical opinion by a non-party physician would be transformed into a basis for equitable tolling. (*Id*.)

In response to respondent's motion to dismiss, petitioners argue that the circumstances they pleaded – wherein the physicians' misrepresentations "induced petitioners to abandon a valid claim they had already identified" and they "relied on their treating providers' affirmative representation that the causal connection between T.H.'s MMR vaccine and his ITP was 'impossible' to prove'" – falls squarely within the framework set forth by the Supreme Court in the *Holland* case and constitutes the type of "fraud" discussed by the Federal Circuit in *Cloer* as grounds for equitable tolling. (ECF No. 17, p. 2 (citing *Holland*, 560 U.S. 631; *Cloer*, 654 F.3d at 1344; *K.G.*, 951 F.3d 1374).) Petitioners contend that respondent's focus on fraudulent concealment misunderstands the basis for their assertion of equitable tolling. (*Id*. at 3.) Specifically:

> Whatever the merits of *Bailey* as applied to a discrete fraudulent-concealment theory, *Bailey's* fraud category does not occupy a separate doctrinal track. The Federal Circuit, sitting en banc, has incorporated *Bailey*-style fraud directly into equitable tolling as one paradigm extraordinary circumstance supporting Vaccine Act tolling. *Cloer*, 654 F.3d at 1344 (citing *Bailey*, 88 U.S. at 349-50). The petition's misrepresentation theory invokes *Cloer's* fraud category under the *Holland/K.G*. equitable-tolling framework — not a discrete *Bailey* discovery-rule claim. Treating these as separate doctrines, and then dismissing the *Holland* claim because it does not satisfy *Bailey's* defendant-misconduct requirement, is precisely the kind of per se analytical move the Federal Circuit has held to be reversible error. *K.G.*, 951 F.3d at 1382.

(*Id*.)

Petitioners stress that in the context of RCFC 12(b)(6), their pleaded factual allegations must be accepted as true, and they must be given all reasonable inferences. (ECF No. 17, pp. 5-6.) Moreover, they assert that as pro se petitioners, their pleading must be construed liberally. (*Id*. at 6 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).) Further still, they assert that equitable tolling must be evaluated on a "case-by-case" basis and that "per se rules" must be avoided. (*Id*. at 7 (citing *K.G.*, 951 F.3d at 1382).) Ultimately, petitioners argue that "the only question on this motion is whether the pleaded facts, taken as true, plausibly fit the *Holland* framework. Whether they

ultimately satisfy it on a developed record is a different question – one for record development, not for the pleadings." (*Id*.)

Petitioners acknowledge that the *Cloer* court "identified fraud and duress as paradigm tolling circumstances" and that ignorance of the causal link between an injury and a vaccine is not enough to support tolling. (ECF No. 17, p. 8 (discussing *Cloer*, 654 F.3d at 1344-45).) Thus, they argue that they are obligated to meet a two-part standard, showing (1) that they pursued their rights diligently, and (2) that an extraordinary circumstance prevented them from timely filing the claim. (*Id*. (citing *K.G*., 951 F.3d at 1379).) Petitioners acknowledge that tolling may be denied for failure to demonstrate either of these two points. (*Id.* at 9.) However, they stress that the circumstances that will support equitable tolling are not limited to those that have been previously enumerated. (*Id*. at 8-9 (citing, *inter alia*, *Young v. United States*, 535 U.S. 43 (2002).)

Regarding the first point, petitioners argue that their diligence is uncontested. (ECF No. 17, p. 10.) They stress that they had found peer-reviewed medical articles identifying the causal connection at issue "[w]ithin hours" of T.H.'s diagnosis and, moreover, they "independently calculated the two-week post-vaccination timeline that defines the Table window." (*Id*. (citing Ex. 17).) Further still, they shared this information with the treating physicians. (*Id.*) They argue that they are obligated only to demonstrate "reasonable diligence" rather than "maximum feasible diligence." (*Id*. at 11 (citing *Holland*, 560 U.S. at 653).)

Regarding the second point, petitioners indicate that they are not invoking fraudulent concealment. (ECF No. 17, p. 11.) They "acknowledge that no Federal Circuit decision has previously applied equitable tolling to a non-defendant provider's misrepresentation"; however, *Cloer*'s enumeration of "fraud or duress" as a paradigm does not limit the source of misconduct to the Secretary. (*Id.* at 12 (citing *K.G*., 951 F.3d at 1382; *Cloer*, 654 F.3d at 1344).) Petitioners argue that "*K.G*. would be incoherent if *Holland* tolling required defendant misconduct, since *K.G*. extended Vaccine Act tolling to mental incapacity – a circumstance involving no government misconduct and no third-party concealment at all. (*Id*. (citing *K.G.*, 951 F.3d at 1380-82).) Petitioners argue that their reliance on *Holland* has already been contemplated in a prior decision by another special master, which noted that concealment of facts that deprive a party of knowledge of their right to file a claim is "usually" done by the opposing party.[7] (*Id*. at 13 (citing *Russo v. Sec'y of Health & Human Servs.*, 20-89V, 2025 WL 1588876, at*9 (Fed. Cl. Spec. Mstr. Apr. 16, 2025).) Petitioners disagree with respondent's interpretation of *Holland*, arguing that the attorney-client relationship was relevant to the factual analysis of whether the conduct at issue was extraordinary and

[7] Although the *Russo* special master concluded that equitable tolling was not available in that case, petitioners argue that it is distinguishable because the medical clinic's misfiling of the vaccine administration record concealed the cause of the injury at issue rather than the petitioner's right to file. (ECF No. 17, p. 22.) They contend that "[w]hile *Russo's* articulation of the rule is consistent with petitioners' theory, *Russo's* application of that rule turned on facts materially different from those pleaded here." (*Id*. (internal citation omitted).)

whether the attorney's representations were reasonably relied upon rather than constituting a limitation of when the analytic framework may be applied. (*Id*. at 13-16.)

Petitioners argue the following:

> What petitioners do not contend — and what their theory does not require — is that providers had an affirmative duty to advise them about the existence of VICP, the limitations period, or the procedural mechanics of filing a federal compensation claim. Respondent's Motion suggests, at MTD page 8 n.1 and pages 10–11, that petitioners' theory imposes such a duty. It does not. Petitioners' theory is the converse: that when parents asked whether the vaccine could have caused the injury, the response they received — that the connection was "impossible to prove" — was inconsistent with what providers themselves had documented in their own contemporaneous chart notes. The duty to volunteer information one is not asked is not the duty petitioners invoke. The duty not to respond to a direct question with information that is objectively false is.

(ECF No. 17, p. 16.) Thus, according to petitioners, this case "sits on the line" drawn by the *K.G*. court between fraud and duress on one side versus mere lack of knowledge of an actionable claim on the other. (*Id*. at 20-21 (quoting *K.G.*, 951 F.3d at 1379 (citing *Cloer*, 654 F.3d at 1344-45)).) Petitioners contend that the *Cloer* petitioner's delay in filing, in contrast to the facts of this case, was attributable only to her own ignorance and not a misrepresentation by another party. (*Id*. at 20-21 (discussing *Cloer*, 654 F.3d at 1326-27).) In this case, the misrepresentation at issue "falls squarely within *Irwin's* recognition that tolling is available where the petitioner has been 'induced or tricked' into allowing the deadline to pass." (*Id*. at 23 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).)

Respondent also filed a reply. (ECF No. 21.) In his reply, he contends broadly that petitioner's response is based on a misreading of the law. (*Id*. at 2-3.) However, he does not provide a detailed rebuttal and instead only reiterates that he stands by the analysis contained in his motion to dismiss. (*See id.* at 1-3.)

## V. Discussion

Petitioners have my sympathy, both because I recognize that they feel they were let down by their son's physicians and because they missed out on the opportunity to pursue their claim.[8] However, I cannot decide this case based on sympathy. It is undisputed that, absent the application of equitable tolling, this case was not timely filed. Thus, it is further undisputed that petitioners bear a burden of demonstrating both that they pursued their rights diligently and that some extraordinary circumstance prevented a timely filing. *K.G.*, 951 F.3d at 1379. Yet, after careful review, and accepting the

[8] Of note, even if petitioners overcame the timeliness issued presented by respondent's motion, it would still remain to be resolved whether the injury at issue meets the Vaccine Act's severity requirement, which is additionally contested by respondent within his Rule 4(c) Report. (ECF No. 14.)

pleaded facts as true, petitioners have not demonstrated either that they were diligent in pursuing their rights or that any extraordinary circumstance prevented them from timely filing their petition.

Petitioners disclaim reliance on fraudulent concealment and assert that a "*Holland*/*K.G.*" framework should instead be applied (ECF No. 17, p. 3), but they do not allege either egregious attorney misconduct as was at issue in *Holland* or mental incapacity as at issue in *K.G*. Rather, they allege, more than merely being unaware of their potential claim as in *Cloer*, that fraud affirmatively misled them into believing that they did not have a viable claim, an allegation that appears to have the character of a fraudulent concealment. In that regard, the Federal Circuit has held in a prior Vaccine Act case that "equitable tolling is *only* warranted when the 'fraud has been concealed' and the party alleging concealment has exercised due diligence 'in coming to the knowledge of the fraud" (emphasis added). *W.J.*, 93 F.4th at 1242 (citing *Bailey*, 88 U.S. at 349; *Simmons*, 86 F.3d at 1142).) Such circumstances have been further described as follows:

> Where acts causing injury are fraudulently concealed from the injured party or where fraud furnishing the basis of an action is of such nature as to conceal itself, a statute of limitations is tolled until the injured party discovers, or with due diligence could have discovered, the injury. . . .To support the result contended for plaintiff would have to establish either that the defendant fraudulently concealed the conduct forming the basis of the claim or that the defendant's conduct by reason of its fraudulent nature was inherently self-concealing.

*Simmons*, 86 F.3d at 1142 (quoting *Ashland Oil Co. v. Union Oil Co*., 567 F.2d 984, 988 (Temp. Emer. Ct. App. 1977), *cert denied*, 435 U.S. 994 (1978)). By contrast, "mere failure to come forward with facts that would provide the plaintiff with a basis for suit does not constitute fraudulent concealment." *W.J.*, 93 F.4th at 1241 (quoting *Simmons*, 86 F.3d at 1143).)

Here, however, the treating physicians did not actively conceal anything and nothing about their conduct was self-concealing with respect to petitioner's potential claim. The treating physicians simply expressed an opinion regarding a causal connection petitioners had already discovered. Indeed, petitioners argue that they "do not allege concealment of the *cause* of T.H.'s ITP – T.H.'s diagnosis and the temporal relationship to his MMR vaccination were known to petitioners and openly documented in the medical record." (ECF No. 17, p. 22.) Similarly, in *W.J.*, it was asserted that by promoting and fostering the view that there is no link between the MMR vaccine and autism "the government concealed the evidence Parents needed to file their petition in a more timely manner." 93 F.4th at 1241-42. However, the Federal Circuit explained that the petition asserted that the parents had "hard evidence" of the alleged link and that this "defeats their contention of fraudulent concealment" because the pleading confirmed that evidence of the type that the parents alleged to be concealed had been available to them at a time when the petition could have been timely filed. *Id*. at 1242.

Here too, petitioners explicitly allege that they had discovered peer-reviewed medical literature identifying a causal link between the MMR vaccine and ITP "[w]ithin hours" of T.H.'s diagnosis. (ECF No. 1, ¶ 2.)

Petitioners insist that "[t]he alleged misconduct here goes to petitioners' knowledge of their *right to file a claim*: a physician's affirmative, authoritative misrepresentation that the vaccine-injury connection was 'impossible to prove.'" (ECF No. 17, p. 22.) But this is a distinction without a difference. Even as they couch it, petitioners' complaint remains that the treating physicians' opinion had the effect of obscuring or concealing the viability of the causal relationship at issue. However, petitioners have not articulated how a physician's opinion, even a highly negative one, regarding the viability of a causal connection they were already aware of could represent an extraordinary circumstance that actually interfered with their ability to discover with reasonable diligence the existence of this program and the requirements for demonstrating a claim. Even accounting for petitioners' argument that submission of a VAERS report was mandatory, merely failing to provide the factual basis for a suit does not support the assertion of equitable tolling. *W.J.*, 93 F.4th at 1241 (citing *Simmons*, 86 F.3d at 1142).)

Petitioners acknowledge that prior special master decisions have concluded that equitable tolling is not available due to lack of awareness of the Vaccine Program. (ECF No. 17, p. 12 (citing *Lynch v. Sec'y of Health & Human Servs*., No. 23-2119V, 2024 WL 3952413, at *2 (Fed. Cl. Spec. Mstr. July 30, 2024); *Speights v. Sec'y of Health & Human Servs.*, No. 03-2619V, 2013 WL 5944084, at *13 (Fed. Cl. Spec. Mstr. Oct. 17, 2013).) However, they argue that these prior cases are distinguishable because they pertained to the causation-in-fact context whereas this case involves a Table injury. (*Id.*) They contend that "[a] provider statement that contradicts a statutory presumption is not a contested medical opinion within professional expertise – it is wrong about what federal law provides for injuries within the Table window." (*Id*. at 12-13.) Yet, this argument actually undercuts the rationale of petitioners' assertion of equitable tolling. Petitioners argue extensively that they were directed away from pursuit of their claim because the treating physicians told them that proving the causal connection at issue may be impossible; however, once they otherwise discovered the program, they determined that, given the presence of a potential Table Injury, they did not necessarily need to prove that causal connection in order to pursue their claim. Thus, even by petitioners' framing, the treating physicians' opinion was not necessarily wrong so much as it was likely irrelevant, a point which was readily discernable if petitioners had acted with diligence in exploring their rights. In evaluating whether extraordinary circumstances prevented a timely filing, "[t]he circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014), *aff'd*, 577 U.S. 250 (2016).

Nor am I persuaded that petitioners' diligence in initially detecting the causal relationship at issue addresses their burden of demonstrating diligence in coming to knowledge of the fraud as they allege it to have occurred. The purportedly fraudulent

conduct at issue occurred after petitioners had performed the research that they argue constitutes their diligence, and the gravamen of their argument is that, despite that prior research, they were nonetheless justified in being lulled into complete non-action by the treating physicians' contrary views. Even accounting for the fact that petitioners need only have exercised reasonable rather than maximum diligence, they did not plead any facts to indicate that they acted diligently subsequent to the treating physicians' alleged misconduct. Instead, petitioners specifically pleaded that after taking no action for three years, they ultimately became aware of the VICP, not by any diligence, but only by happenstance when they received an unsolicited prompt about vaccines. (ECF No. 1, ¶ 120.)

But in any event, even entirely setting aside the questions of concealment and diligence, petitioners' characterization of the treating physicians' conduct as constituting an underlying fraud is also lacking. Petitioners correctly observe that in *K.G.*, the Federal Circuit explained that, in contrast to merely lacking knowledge of an actionable claim, "tolling is available, for example, when a claimant is a victim of fraud or duress." 951 F.3d at 1380. Such fraud refers to circumstances where a would-be claimant "has been induced or tricked . . . into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96. However, there are a number of reasons why the misconduct alleged by petitioners cannot be said to have induced petitioners to allow the filing deadline to pass.

First, while petitioners assert that the statements made by T.H.'s physicians were *legally* wrong, it cannot be reasonably inferred from the pleaded facts that petitioners' discussions with T.H.'s treating physicians constituted any form of advice or opinion with respect to the viability of a vaccine injury claim. Petitioners explicitly pleaded that they did not become aware of the existence of the VICP until years later. (ECF No. 1, p. ¶ 120.) Moreover, they explicitly pleaded that they do not even know whether the physicians were aware of the concept of a Table Injury. (*Id*. at ¶ 90.) Accordingly, the pleaded facts establish that the VICP was not a topic of discussion between petitioners and T.H.'s physicians and nothing in the pleading supports any notion that the discussions at issue went beyond the context of the doctor-patient relationship.

Second, petitioners overstate the degree to which they were potentially misled by the statements at issue. Although the petitioners repeatedly argue that they were left believing that proving vaccine-causation was "impossible," petitioners pleaded that Mr. Hofmaenner could not recall the exact details of his conversation with the treating physicians and that T.H.'s hospital discharge record instead indicated that the cause of his ITP would be "difficult" to prove. (ECF No. 1, ¶¶ 5, 45, 57.) Moreover, they pleaded that Mrs. Hofmaenner's contemporaneous understanding was more nuanced. She had stated that the treating physicians' view of the MMR-ITP connection was that it was "[v]ery hard/impossible to prove that but is a possibility" (*Id*. at ¶ 47 (quoting Exhibit 22)), which confirms that petitioners' initial understanding was that the physicians had not articulated an absolute impossibility. Accordingly, contrary to what petitioners argue, the pleaded allegations do not indicate that the treating physicians actually stated that proving causation would in all events be "impossible."

Third, petitioners have not pleaded facts that demonstrate the treating providers' opinion to have been false as a medical matter. They assert that the conclusion that it is "impossible" to prove the cause of T.H.'s ITP is "objectively false." ECF No. 1, ¶¶ 3-8, 77.) However, petitioners pleaded that T.H.'s discharge summary indicated that his treating physicians attributed his ITP to a viral infection and further pleaded that he did, in fact, suffer an upper respiratory infection just prior to receipt of the vaccination at issue. (*Id.* at ¶¶ 5, 16-17, 53, 57.) Further still, they pleaded that the medical records document that the treating physicians placed onset of T.H.'s ITP as coincident to both the vaccination and the illness. (*Id.* at ¶ 53.) Thus, the fact that the treating physicians' view reflects an assessment of competing causes means that it was not "objectively false" to opine that the cause of T.H.'s own ITP is difficult to determine simply because the MMR vaccine can as a general matter cause ITP. The fact that petitioners may have been entitled to a presumption of causation within the VICP is not to the contrary.[9] Nor does the fact that petitioners disagree that the treating physicians' opinion is clinically supported render it misleading.

Fourth, regardless of any of the points above, petitioners also explicitly pleaded that they did not actually accept the treating physicians' opinion. The petition states that, despite the alleged misconduct, "[p]etitioners still believed the vaccine had caused T.H.'s ITP. That is why they sought to delay his second dose." (ECF No. 1, ¶ 114.) Petitioners cannot credibly contend that they were induced or tricked by a medical opinion that they had not credited in the first place. Nor, even acknowledging that petitioners seek to distinguish concealment of the cause of T.H.'s ITP from concealment of their right to file a claim, can they reasonably assert that they accepted the treating physicians' opinion as a legal matter while also refusing to accept it as a medical matter. Though petitioners do get the benefit of inferences in the context of a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

And, fifth, petitioners have not pleaded facts that indicate the treating physicians' conduct actually prevented their discovery of the VICP. Petitioners seek to explain their inaction over the span of three years by stating that "[t]o search for vaccine injury compensation, [Mr. Hofmaenner] would have had to disbelieve his son's diagnosis, reject the After Visit Summary, and assume his child's treating physicians were wrong." (ECF No. 1, ¶ 119.) They assert it would be unreasonable to expect them to act counter to these touchstones. Yet the petition is explicit in explaining that petitioners did disbelieve the diagnosis of ITP secondary to infection, did reject the After Visit Summary, and did believe the treating physicians were wrong. They pleaded that Mr. Hofmaenner knew of the causal link to vaccination and pressed the physicians on this connection multiple times. Moreover, petitioners pleaded that, even prior to the expiration of the statute of limitations, they determined that they would delay giving T.H. a further MMR dose because they remained concerned that his ITP was vaccine-caused despite the conclusion of his treating physicians. (*Id.* at ¶ 111 (quoting Ex. 27);

---

[9] Under the Vaccine Act, the presumption of causation afforded to Table injury can be rebutted by the government with a showing that the injury was nonetheless caused by a factor unrelated to vaccination, such as a viral infection. § 300aa-13(a)(1)(B).

*see also id.* at ¶ 114.) Thus, the pleaded facts do not indicate that the alleged misconduct of the treating physicians prevented the petitioners from seeking information about the VICP.

Ultimately, after a careful evaluation of the facts as pleaded, and mindful of the standards applicable on a motion to dismiss, I do not find petitioners arguments in favor of equitable tolling to be persuasive in light of the points discussed above. Accepting the pleaded facts as true, I cannot conclude that the conduct of T.H.'s treating physicians represented any kind of extraordinary circumstance, that petitioners were misled, that they were induced into not researching vaccine injury claims, or that the conduct of T.H.'s physicians reasonably explains why it took petitioners over three years to learn of the existence of the VICP despite initially discovering the connection between the MMR vaccine and ITP within hours of diagnosis. Although petitioners stress that they were initially quite diligent in researching the potential connection between T.H.'s MMR vaccine and his ITP, they have not pleaded facts that support that they were diligent in pursuing their rights within this program. While it may have been desirable for T.H.'s treating physicians to have taken petitioners' concerns more seriously, the pleaded facts make clear that it was only petitioners' ignorance of the existence of the VICP that prevented them from filing their claim, which does not support equitable tolling. *Accord K.G*., 951 F.3d at 1381.

Finally, I note that it is not necessary to resolve the parties' dispute as to whether a treating physician's conduct could ever provide a basis for equitable tolling relative to the Vaccine Act. Nor would a categorical determination suffice to resolve petitioners' own eligibility for equitable tolling. *Accord James v. Wilkie*, 917 F.3d 1368, 1375 (Fed. Cir. 2019); *Falzon v. Sec'y of Health & Human Servs*., No. 21-1082, 2023 WL 395879, at *9 (Fed. Cl. Jan. 25, 2023) (explaining equitable tolling must be resolved on a case-by-case basis). Nonetheless, without suggesting any per se rule, it remains the case that when equitable tolling is asserted on the basis of fraudulent statements, the outcome "depends on who made them and the circumstances in which they were made." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959). Here, these considerations do not favor equitable tolling. One important principle on which this type of equitable relief is premised is the notion that "no man may take advantage of his own wrong." *Id*. at 232; *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (stating that "[i]f want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of the defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of mere lapse of time.") However, this principle is not implicated in this case. As respondent has noted, petitioners have not pleaded any facts to suggest the treating physicians were acting on behalf of the government respondent. Nor have petitioners pleaded any facts that would suggest that the treating physicians as non-party individuals would benefit from preventing petitioners' claim or otherwise had any motivation to prevent petitioners from pursuing their claim.

## VI. Conclusion

I stress again that petitioners do have my sympathy. However, for all the reasons discussed above, the petition was not timely filed, and equitable tolling is not appropriate under the facts and circumstances presented. Therefore, this case is dismissed.[10]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

[10] In the absence of a timely-filed motion for review of this Decision, the Clerk of the Court shall enter judgment accordingly.